Robert A. HAGGENJOS Appellant,

v.

STATE of Indiana, Appellee.

No. 585S193.

Supreme Court of Indiana.

May 29, 1986.

Susan K. Carpenter, Public Defender, Linda Rodriguez-Torrent, Deputy Public Defender, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., Marguerite M. Sweeney, Deputy Atty. Gen., Indianapolis, for appellee.

PIVARNIK, Justice.

Defendant-Appellant Robert A. Haggenjos was convicted of attempted murder, a class A felony, at the conclusion of a jury trial in the Allen County Superior Court. He was sentenced to a twenty-five (25) year term. This Court affirmed his conviction on direct appeal. *Haggenjos v. State* (1982), Ind., 441 N.E.2d 430, *reh. denied* (1983). Appellant filed a Petition for Post-Conviction Relief which was denied. The present appeal is from this denial and raises the following issues:

1. whether the trial court erred in its instructions to the jury; and

2. whether Appellant was denied effective assistance of counsel.

In post-conviction proceedings, the burden of proof rests with the petitioner to establish his grounds for relief by a preponderance of the evidence. The trial court's decision will be reversed only where

the evidence is without conflict and leads unerringly to a result not reached by the trial court. *McHugh v. State* (1984), Ind., 471 N.E.2d 293, 294–295; Ind.R.P.C. 1 § 5. The function of our post-conviction review pursuant to Ind.R.P.C. 1 is a special remedy whereby a party can present error which for various reasons was not available or known at the time of trial or on direct appeal. *Phillips v. State* (1982), Ind., 441 N.E.2d 201, 203. Post-conviction action is not a substitute for direct appeal, and any issue which was or could have been addressed at trial or on direct appeal is not the proper subject of a post-conviction action. *See Morris v. State* (1984), Ind., 466 N.E.2d 13, 14.

### I

■ Appellant contends the trial court erred in failing to instruct the jury regarding the specific intent element of attempted murder. Clearly this error was available on direct appeal and could have been addressed at that time. By not doing so, Appellant has waived this issue. *Id.* In anticipation of this conclusion, Appellant concedes that defense counsel made no objections to the instructions and failed to raise the issue on appeal, but argues that the issue should be addressed nonetheless because it is of fundamental magnitude. He further argues that because the State failed to raise the issue of waiver at the post-conviction hearing, we are now divested of any authority to find the issue waived.

The same issue was before us in *Bailey v. State* (1985), Ind., 472 N.E.2d 1260, 1263, *reh. denied* (1985), where we stated:

> "To unreservedly hold the door open for appellate review under the post-conviction remedy rules, regardless of the circumstances which preceded, would perforce characterize post-conviction relief as some sort of 'super-appeal' contrary to its intended function."

*Citing Langley v. State* (1971), 256 Ind. 199, 210, 267 N.E.2d 538, 544. We further recognized that a claim of *fundamental* error could be raised in a post-conviction petition regardless of whether such issue was waived in the direct appeal process. An error characterized as fundamental, however, is one which is "blatant and which if not rectified would deny the petitioner 'fundamental due process'." *Id.* We then decried the practice of alleging denial of due process in the "free standing" form of an allegation of fundamental error. *Id.*

■ The error alleged by Appellant does not rise to the level considered in *Bailey.* While Appellant alleges that an element of the crime charged was omitted from jury instructions and that the instructions given were inconsistent, a review of the instructions themselves and a comparison with the statutes in effect at the time reveals that the instructions clearly explained the state of the law. Ind.Code § 35–41–5–1(a) (Burns 1979) stated:

> "A person attempts to commit a crime when, acting with the culpability required for commission of the crime, he engages in conduct that constitutes a substantial step toward commission of the crime...."

Ind.Code § 35–42–1–1 (Burns 1979) stated:

> "A person who (1) knowingly or intentionally kills another human being ... commits murder, a felony."

The court's Final Instruction No. 3 repeated the attempt statute word for word in its entirety and went on to state that to convict the defendant the State needed to prove beyond a reasonable doubt:

> "The defendant (1) knowingly or intentionally (2) engaged in conduct: shooting Beverly Ann Haggenjos with a handgun causing serious bodily injury (3) that the conduct was a substantial step toward the commission of the crime of murder."

The court's Final Instruction No. 7 repeated the murder statute as set forth above. Finally, the court's Final Instruction No. 5 explained that the crime charged required proof of specific intent before the defendant could be convicted, and explained that specific intent means more than a general intent to commit the act. It further explained that to establish specific

intent the State had to prove the defendant did an act which the law forbids, purposely intending to violate the law.

▆▆ Appellant further argues the trial court incorrectly instructed the jury that intent to kill could be presumed. Final Instruction No. 6 stated:

"Every man is presumed to intend the natural and probable consequences of his acts, and therefore, the intent to commit a criminal offense may be inferred from the acts, words or declaration of the person accused, as well as from the manner and circumstances of the act committed."

Appellant contends this instruction relieved the State of the burden of proof beyond a reasonable doubt on the essential element of intent to kill. Again, we find this issue waived because Appellant failed to raise this error at trial or on appeal. *Morris,* Ind., 466 N.E.2d at 14; *Phillips,* Ind., 441 N.E.2d at 203. Furthermore, the presumption in Final Instruction No. 6 is stated in permissive language, that "the intent to commit a criminal act *may* be inferred" (emphasis added). This issue was addressed by us in *Jacks v. State* (1979), 271 Ind. 611, 625–626, 394 N.E.2d 166, 175–176, *reh. denied* (1979), where we held, "A proper instruction on the subject, then, would advise the jury that they may *infer* intent from certain proved acts of the defendant ..." This instruction, read together with Preliminary Instructions Nos. 4 and 5 and Final Instructions Nos. 5 and 6 explaining the State's burden of proof and the presumption of innocence, leave no question that the State still had to prove specific intent beyond a reasonable doubt.

All of the instructions, when read together, clearly explained to the jury each of the elements which needed to be proven. We find no error, of fundamental dimension or otherwise, in the jury instructions.

## II

Appellant's second allegation of error is that he received ineffective assistance of counsel at his original trial and on appeal. In order to show ineffective assistance of counsel, Appellant must establish that counsel's performance was deficient and that such deficiency prejudiced his case. Appellant must show that in light of the circumstances, the identified acts or omissions of counsel were outside the wide range of professionally competent assistance consistent with elaborated prevailing professional norms. He must further show there is a reasonable probability but for counsel's unprofessional error the result of the proceedings would have been different. *Strickland v. Washington* (1984), 466 U.S. 668, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674, 692–693, U.S., *reh. denied* (1984), 467 U.S. 1267, 104 S.Ct. 3562, 82 L.Ed.2d 864; *Bieghler v. State* (1985), Ind., 481 N.E.2d 78, 96, *reh. denied* (1985) U.S., *cert. denied* (1986), —— U.S. ——, 106 S.Ct. 1241, 89 L.Ed.2d 349; *Elliott v. State* (1984), Ind., 465 N.E.2d 707, 710.

▆▆ As we stated in *Seaton v. State* (1985), Ind., 478 N.E.2d 51, 54, *reh. denied* (1985), we presume counsel was competent and require convincing evidence to rebut that presumption. We will not second-guess counsel in his choice of strategy and we will not reverse due to choice of strategy where it appears counsel exercised professional judgment. *Id.* Thus we dispose of at least six instances which Appellant claims are evidence of ineffective counsel:

(1) counsel's failure to file a defense of insanity. He did, however, file a Motion for Psychiatric Examination which resulted in two psychiatrists finding Appellant sane at the time of the offense and competent to stand trial.

(2) counsel's failure to object to testimony about Appellant's conversation with a priest. This conversation did not rise to a privileged level since it was not a confession or admission made in the course of a discipline enjoined by the church. *Ball v. State* (1981), 275 Ind. 617, 619–620, 419 N.E.2d 137, 139–140, *reh. denied* (1981); Ind.Code § 34–1–14–5 (Burns Supp.1985).

(3) counsel's failure to instruct the jury on attempted voluntary manslaughter. It is not clear from the record that counsel did not seek such an instruction. He did

tender instructions to the jury on battery and criminal recklessness, and could have been seeking convictions only on these lesser offenses if the State failed to establish intent to kill.

(4) counsel's failure to stress that Appellant had been drinking on the night of the offense. Counsel could very well have decided such was not in his client's best interests if the intoxication was not so intense as to preclude formation of criminal intent.

(5) counsel's failure to object at various times.

(6) counsel's failure to raise certain issues on direct appeal.

Appellant also claims counsel was ineffective because he failed to challenge two prospective jurors, one who was dating the daughter of an investigator in the prosecutor's office, and another who was a neighbor of the investigator. Appellant does not show these relationships rise to a level presuming implied bias, thus counsel would not necessarily be expected to challenge the jurors. Appellant maintains his counsel should have sought a mistrial due to the prosecutor's comments in closing argument concerning the jury setting community standards. Counsel's objection to the comment was sustained and the jury was admonished. On direct appeal we determined this was the proper procedure and cured any harm. *Haggenjos*, Ind., 441 N.E.2d at 432. Appellant also argues counsel should have sought a motion *in limine* in regard to Appellant's silence after arrest. There are constitutional guarantees which render such a motion *in limine* unnecessary. Upon feeling these guarantees were violated, counsel argued for a mistrial. We cannot hold counsel responsible to anticipate via motion *in limine* that a witness will make an impermissible reference to Appellant's right to remain silent. *See Id.* at 433. Finally, Appellant complains that counsel allowed the trial judge to communicate with the jurors outside Appellant's presence. He does not, however, set forth the contents of the alleged communications, nor does he attempt to show any prejudice. We would be able only to conjecture as to such and will not find error.

The trial court is affirmed.

GIVAN, C.J., and DeBRULER, SHEPARD and DICKSON, JJ., concur.