Gregory L. LAMPKINS, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 18A04–0009–CR–396.

Court of Appeals of Indiana.

June 4, 2001.

Transfer Denied August 24, 2001.

---

Kelly N. Bryan, Muncie, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Nandita G. Shepherd, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

1. Ind.Code § 35–42–1–3.

## OPINION

VAIDIK, Judge.

### Case Summary

Gregory A. Lampkins appeals his conviction for voluntary manslaughter, a class B felony.[1] Lampkins contends that the trial court's jury instruction with respect to intent improperly shifted the burden of proof onto him due to its mandatory language. We find that the trial court's reading of this instruction constituted fundamental error because the jury could have interpreted the instruction to mean that if Lampkins fired a gun, his intent is presumed. Thus, we reverse.

### Facts and Procedural History

On April 23, 1983, the Muncie Police Department arrived at a residence to find that Lampkins' uncle, Gerald Richardson had been shot. Richardson died from his injuries. Lampkins' grandmother, Grace Thompson, told police that Lampkins had shot him after the two were involved in an altercation. The police asked if Lampkins was in a crowd of people gathered outside the residence. In response, Lampkins stepped forward, identified himself, and handed a police officer the gun used in Richardson's shooting. Lampkins maintained that the shooting was an accident.

Subsequently, Lampkins was charged with murder.[2] During his trial, the following jury instruction was proposed:

> The fact that the defendant acted knowingly may be inferred from the voluntary commission of a prohibited act and from the facts and circumstances surrounding that act. The law presumes that an individual intends the consequences of his act.
>
> If you find that the defendant used a deadly weapon and if you further find

2. Ind.Code § 35–42–1–1.

from the surrounding facts and circumstances that he used the deadly weapon in such a manner that there was a high probability that the death of another person was the natural and probable consequences of his action, then you may conclude that the defendant acted knowingly.

Record at 66. Lampkins' trial counsel objected to this instruction because it confused the definitions of intentionally and knowingly. The trial court overruled this objection. Trial counsel also requested that the instruction read "the *natural* consequences of [h]is act," and the State agreed to make the requested change. Record at 370. (emphasis added).

After the trial, the jury convicted Lampkins of voluntary manslaughter. The trial court sentenced Lampkins to eight years imprisonment. Lampkins filed this belated appeal.

**Discussion and Decision**

Upon appeal, Lampkins contends that the trial court erred in reading the jury instruction with respect to intent because it created a mandatory presumption, and thus, improperly shifted the burden of proof from the State to him.

 Initially, we note that Lampkins concedes that his counsel at trial did not object to this instruction on the grounds that it created a mandatory presumption. A failure to object to a jury instruction ordinarily results in waiver of the issue. *Moreland v. State*, 701 N.E.2d 288, 294 (Ind.Ct.App.1998). The only objections made to this instruction were based on different grounds. A defendant is limited on appeal to the grounds advanced at trial. *Jackson v. State*, 712 N.E.2d 986, 988 (Ind. 1999). Thus, the issue of whether the instruction was mandatory was not preserved for appeal.

 However, Lampkins maintains that waiver is avoided because the trial court committed fundamental error in reading this instruction. Waiver can be avoided if the alleged error falls within the very narrow exception of fundamental error. *Talley v. State*, 736 N.E.2d 766, 768 (Ind.Ct.App.2000). "Fundamental error is error that, if not corrected, would deny a defendant fundamental due process. The error must be so prejudicial to the rights of the defendant as to make a fair trial impossible." *Moreland*, 701 N.E.2d at 294 (internal citations omitted). Therefore, we will address whether the trial court's reading of the jury instruction regarding intent constituted fundamental error.

In the instant case, Lampkins alleges that the jury instruction regarding intent impermissibly created a mandatory presumption in favor of the State, effectively shifting the burden of proof. Specifically, Lampkins argues that the instruction containing the language "the law presumes that an individual intends the natural consequences of his act" inferred that if the State proved Lampkins fired the gun, his intent would be presumed. Record at 66.

Lampkins relies upon *Sandstrom v. Montana*, 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979) to support his argument. In that case, the Court held that the jury could have interpreted an instruction stating: "[t]he law presumes that a person intends the ordinary consequences of his voluntary acts" as a mandatory presumption. *Id.* at 513, 515, 99 S.Ct. 2450. Thus, the court held that the instruction improperly shifted the burden of proof on the issue of intent, violating the Due Process Clause by not requiring the State to prove every element of the crime charged. *Id.* at 520–21, 99 S.Ct. 2450. The Court reasoned that the instruction denied the defendant due process in cases where intent is at issue because it failed to explain that

this presumption could be rebutted by the defendant coming forth with evidence to the contrary. *Id.* at 517–18, 99 S.Ct. 2450.

Shortly thereafter, the Indiana Supreme Court considered the same issue in *Jacks v. State*, 271 Ind. 611, 394 N.E.2d 166 (1979). In *Jacks*, the court distinguished the instruction before it from the one in *Sandstrom*. The instruction read, "everyone is presumed to intend the natural and probable consequences of his voluntary acts, unless the circumstances are such to indicate the absence of such intent." *Id.* at 174. The court held that this instruction did not have either the conclusive or burden-shifting effect as the instruction in *Sandstrom* because the presumption was qualified by relaying that jurors could look to the surrounding circumstances in the present case. *Id.* at 175. However, the court noted that a proper instruction should state that the jury may infer intent from certain proved acts of the defendant rather than the law presumes intent. *Id.* at 175–76.

This issue has since been the subject of much debate. The United States Supreme Court, relying on *Sandstrom*, later explained that the analysis hinged on the difference between a mandatory presumption and a permissive inference. *Francis v. Franklin*, 471 U.S. 307, 105 S.Ct. 1965, 85 L.Ed.2d 344 (1985). Specifically, the Court stated:

A mandatory presumption instructs the jury that it must infer the presumed fact if the State proves certain predicate facts. A permissive inference suggests to the jury a possible conclusion to be drawn if the State proves predicate facts, but does not require the jury to draw that conclusion.

*Id.* at 314, 105 S.Ct. 1965. The Court also pointed out that the challenged portion of the instruction "must be considered in the context of the charge as a whole." *Id.* at 315, 105 S.Ct. 1965. The Court noted that other instructions might explain the infirm language, so that the jury would not consider the instruction in question to create a mandatory presumption. *Id.* Despite these considerations, the Court in *Francis*, held that the instructions before it created a mandatory presumption. The instructions read, "acts of a person of sound mind and discretion *are presumed* to be the product of the person's will" and "a person *is presumed* to intend the natural and probable consequences of his acts.'" *Id.* at 316, 105 S.Ct. 1965. Moreover, the Court reasoned that the infirmity of these instructions was not cured by the language that followed in the instructions that the presumption may be rebutted. *Id.*

Our supreme court concluded in *Winegeart v. State*, 665 N.E.2d 893, 904 (Ind. 1996), that it was not fundamental error to read an instruction including the phrase that the jury may infer that every person intends the natural and probable consequences of his voluntary acts.[3] The appellant argued that such an instruction impermissibly relieved the State of its burden to

---

**3.** The instruction in question read in pertinent part,

"[T]he State is not required to make proof of specific intent by direct evidence, since purpose and intent are subjective facts. That is, they exist within the mind of man, and since you cannot delve into a person's mind and determine his purpose and intent, you may look to all the surrounding circumstances, including what was said and done in relation thereto. The State is only required to produce such evidence as will satisfy the jury beyond a reasonable doubt that the crime charged was committed by the defendant with the degree of culpability charged in the information. You may, however, infer that every person intends the natural and probable consequences of his voluntary acts, unless the circumstances are such to indicate the absence of such intent...."

*Id.* at 905 n. 2.

prove specific intent. The court reasoned that the instruction's repeated use of the word "may" throughout the instruction created only permissive inferences, and thus there was no error. *Id. But see Walker v. State,* 632 N.E.2d 723, (Ind.1994) (holding on rehearing that giving the instruction "[e]very man is presumed to intend the natural consequences of his acts" denied defendant fundamental due process and reasoning that neighboring instructions failed to explain that the prosecution had the burden of proof).

More recently, our court held that informing the jury that the law presumes that an individual intends the consequences of his act was fundamentally erroneous. *Matthews v. State,* 718 N.E.2d 807, 810 (Ind.Ct.App.1999). The court emphasized that this instruction was not concerning a different issue, but covered one of the elements charged, the defendant's intent and that other instructions regarding intent given at a later time did not serve to qualify the instruction. *Id.*

Similar to the language in *Sandstrom* and *Matthews,* the instruction in the instant case read, "[t]he law presumes that an individual intends the natural consequences of his act." Record at 66. Unlike *Jacks* and *Winegeart,* where the instructions in question read that the jury *may* infer intent, the instruction here implied an irrebuttable presumption that if Lampkins fired the gun, the law presumes intent. This is the type of language that the Supreme Court in *Francis* struck down because the instruction told the jury that it must infer intent if the State proves the predicate facts regardless of whether the jury was later told that the presumption might be rebutted. This instruction fails to inform the jury that any inferences made from Lampkins' actions are permissive.

Further, this error was not cured by looking at the instruction as a whole or in the context of the other instructions. Although the sentences preceding and following the one in question inform the jury that, from looking at the surrounding facts and circumstances, it may infer that Lampkins acted knowingly, these did not serve to qualify the mandatory presumption. The possibility remains that members of the jury could have interpreted "the law *presumes*" language as a mandatory presumption. The infirmity of this instruction also cannot be remedied by other instructions relaying that the State had the burden to prove each element beyond a reasonable doubt and that Lampkins was presumed innocent. Lampkins' defense at trial was based upon the theory that he did not knowingly kill Richardson because the shooting was an accident. Thus, the element of intent was the sole issue in this case, and where intent is at issue, *Sandstrom* dictates reversal. This instruction rises to the level of fundamental error, depriving Lampkins of a fair trial.

Judgment reversed.

ROBB, J., and BROOK, J., concur.